UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Safety National Casualty Corp., | Case No. 2:23-cv-00437-CDS-MDC |
| Plaintiff | **Order Granting Plaintiff's Motion for Summary Judgment** |
| v. | |
| Eric G. Bender, et al., | [ECF No. 29, 34] |
| Defendants | |

Plaintiff Safety National Casualty Corp. ("Safety National") brings this single claim declaratory action against Eric Bender, Xavier Summers, and Owen Hunnel under a commercial general liability insurance policy issued to Summers's and Hunnel's former employer, Wenevada LLC ("Wendy's") for an underlying lawsuit[1] involving the shooting of defendant Bender. Compl., ECF No. 1. Safety National filed a motion to strike Bender's expert's testimony. ECF No. 29. The motion is fully briefed. ECF No. 30; ECF No. 31. Safety National also filed a motion for summary judgment, ECF No. 34, which is fully briefed, ECF No. 35; ECF No. 36. For the reasons herein, I grant Safety National's motion for summary judgment, deny the motion to strike as moot, and close this case.

I. Background

    A. The underlying lawsuit (the Bender Action)

According to the complaint in the Bender Action, Summers and Hunnel, while employed at a Wendy's restaurant, left the restaurant and walked to a neighboring Terrible Herbst gas station where Bender was filling up his vehicle with gas. Bender Action Compl., Pl.'s Ex. A, ECF No. 1-2 at ¶ 15. According to a police report on the incident, a fight broke out between Summers,

---

[1] *Eric G. Bender v. Wenevada LLC, a Domestic Limited Liability Company, d/b/a Wendy's; Owen Hunnel, an Individual; Xavier Summers, an Individual; Does I through X; and Roe Business Entities I through X, inclusive*, in Eighth Judicial District Court, Case No. A-22-854381-C. I refer to this as the "Bender Action."

Hunnel, and Bender, during which Bender was shot by Hunnel. Police Report, Pl.'s Ex. B, ECF No. 34-3 at 20–21. As a result of the fight, Summers was convicted of assault with a deadly weapon and is currently incarcerated at Southern Desert Correctional Center, Summers Nev. Dep't of Corrs. Inmate Rep., Pl.'s Ex. C, ECF No. 34-4, and Hunnel was convicted of battery with a deadly weapon and is currently incarcerated at Ely State Prison, Hunnel Nev. Dep't of Corrs. Inmate Rep., Pl.'s Ex. D, ECF No. 34-5. On June 21, 2022, Bender filed suit against Hunnel and Summers for the altercation at the gas station. Bender Action Compl., ECF No. 1-2. The causes of action pled against Summers and Hunnel were for negligence, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. *Id.*

On September 24, 2022, the state court granted Wendy's' motion to dismiss. Pl.'s Ex. E, ECF No. 34-6. In that ruling, the state court found that:

> the altercation/shooting **had nothing to do** with the business operations of the Wendy's restaurant and did not even take place on Wenevada's premises . . . the altercation/shooting incident had no connection or tie-in to any task assigned to Hunnel and/or Summers, and it was Hunnel's and Summer's [sic] independent and voluntary choice to engage in such activity with the Plaintiff off Wenevada premises.

*Id.* (emphasis added). That ruling was affirmed by the Nevada Court of Appeals. *Bender v. Wenevada, LLC*, 549 P.3d 518 (Nev. 2024) (unpublished). I take judicial notice of the order and affirmed ruling. *See Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006) (allowing for judicial notice in federal court of state court orders and proceedings).

**B.  The Policy**

Safety National issued a commercial policy to Wendy's for the policy period of July 1, 2021, to July 2, 2022 (the "Policy'). Commercial Policy Number GL 4063308, Pl.'s Ex. G, ECF No. 35-8. The Policy states that bodily injury and damage liability are covered by Safety National as follows:

> a. [Safety National] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [Safety National] will have the right and duty to defend the

insured against any "suit" seeking those damages. However, [Safety National] will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. [Safety National] may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*Id.* at 44. The Policy only applies to bodily injury if the bodily injury "is caused by an 'occurrence' that takes place in the 'coverage territory[.]'" *Id.* An occurrence "means **an accident**, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 125 (emphasis added).

### C. The instant action

On March 23, 2023, Safety National filed its complaint for declaratory judgment. Compl., ECF No. 1. The complaint asserts that Summers's and Hunnel's conduct was not an accident and thus not an occurrence as defined by the Policy. Accordingly, the conduct did not give rise to coverage under the Policy. *Id.* at ¶ 32. Safety National further asserts that the Policy does not provide coverage for bodily injury that is intended or expected, as set forth in Exclusion 2(a) of the Policy. *Id.* at ¶ 33. It also contends that the Policy does not provide coverage because Summers and Hunnel were not engaged in acts within the scope of their employment or performing duties related to the conduct of Wendy's business at the time of the assault. *Id.* at ¶ 28.

## II. Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). At the summary judgment stage, the court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed; the case must then proceed to the trier of fact. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.

1995). *See also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Once the moving party satisfies Federal Rule of Civil Procedure 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp.*, 477 U.S. at 323. "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial." *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

### III. Discussion

#### A. Local rules

As a threshold matter, the court first addresses Bender's exhibits attached to his pleadings. Counsel is reminded that Local Rule IC 2-2(3) requires that exhibits and attachments "be attached as separate files" not as part of the base document. LR IC 2-2(3)(A). Bender simply incorporated his exhibits directly in his filings. *See, e.g.*, ECF No. 35. The local rules exist to streamline court processes and preserve court resources, so I direct the parties to follow them in the future in this case and any other litigation in this district. Failing to follow the local rules may result in the court striking, or not considering, exhibits in the future.

#### B. Safety National's motion for summary judgment

Safety National argues that the Policy does not extend coverage to Hunnel or Summers in the Bender Action because their intentional actions preclude them from qualifying as insureds under the Policy. ECF No. 34 at 8. Specifically, Safety National argues that the Policy only covers employees' acts within the scope of their employment or while performing duties related to the conduct of Wendy's business. *Id.* (quoting Com. Pol'y No. GL 4063308, Pl.'s Ex. G, ECF No. 34-8 at 134).

Bender argues that a genuine issue of material fact exists as to whether Hunnel and Summers should be afforded coverage under the Policy because "the Shooter Defendants were already found liable to Bender based on their negligent acts by a finder of fact after a bench trial

in the state court." ECF No. 35 at 15. He spends much of his motion arguing that because the state court found Hunnel and Summers negligent, the issue of negligence cannot be relitigated under the doctrine of res judicata. *Id.* at 17. However, I need not address whether the issue of negligence is precluded here because Hunnel's and Summers's negligence is not relevant to whether they are covered by the Policy. And it is well-established that coverage is not afforded for intentional acts, even when negligence is pled against the insured. *See Hansen v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 6204822, at *1 (D. Nev. Dec. 12, 2012).

      Here, there is no dispute that the Policy provides coverage for "employees," but "only for acts within the scope of their employment by [Wendy's] or while performing duties related to the conduct of [Wendy's] business." Com. Pol'y No. GL 4063308, Pl.'s Ex. G, ECF No. 34-8 at 134. Nevada law is clear that where a policy, like the one here, states that employees are only covered for acts that fall within the scope of their employment or while performing duties related to the conduct of the insured's business, intentional torts/acts committed by an insured's employee do not qualify as occurrences under an insurance policy and are further precluded from coverage under the expected or intended acts exclusion. *See Allstate Ins. Co. v. Bruttig*, 2006 WL 3248393, at *3 (D. Nev. Nov. 3, 2006) (insured's actions in punching and kicking another were not accidental actions and therefore did not qualify as an occurrence); *Am. Nat. Prop. & Cas. Co. v. Hanna*, 2008 WL 682406, at *3 (D. Nev. Mar. 6, 2008) (act of kicking another deemed intentional and not an accident thereby negating coverage). *Allstate Ins. Co. v. Nolte*, 2012 WL 2780078, at *4 (D. Nev. July 9, 2012) (insured shoving victim backward onto pavement deemed intentional and not an accident thereby negating coverage); *Liberty Ins. Corp. v. Hohman*, 2023 WL 3645933, at *4 (D. Nev. May 24, 2023) (act of placing hands around a child's neck causing bruising excluded from liability policy which contained exclusion for injury "expected or intended by the 'insured[.]'"). Accordingly, there is no coverage as a matter of law. *See also Hansen v. Liberty Mut. Fire Ins. Co.*, 2012 WL 4611013, at *4 (D. Nev. Sept. 30, 2012); *Hansen v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 6204822, at *1.

It is undisputed that Hunnel and Summers left the Wendy's where they were working and entered a neighboring gas station where they "attacked Bender, and he was shot with a firearm." ECF No. 35 at 4. It is also undisputed that "Hunnel and Summers were charged with attempted murder and battery. Summers was convicted of assault with a deadly weapon and Hunnel was convicted of battery with the use of deadly weapon." *Id.* And that "Bender filed a civil suit against Hunnel and Summers for assault, battery, intentional infliction of emotional distress, negligence, and negligent infliction of emotional distress." *Id.* at 5. The judgment against Hunnel and Summers states:

> Here, [Hunnel and Summers] as set forth above physically attacked the [Bender] which culminated in the Defendant Hunnell shooting the Plaintiff. **[Hunnel and Summers] are liable for assault** because they caused Plaintiff [Bender] to feel apprehension of harmful or offensive contact. Throughout the entire incident, [Bender] felt apprehensive of harmful and offensive contact from [Hunnel and Summers] . . . . A defendant is liable for battery if (a) he acts intending to cause a harmful or offensive contact with another person, and (b) a harmful contact with the other person directly or indirectly results. Restatement (Second) of Torts § 13 (1965) . . . . **[Hunnel and Summers] are liable for battery** because they intended to cause a harmful or offensive contact with Plaintiff [Bender] and came into harmful contact with [Bender].

J. in Bender Action, Def.'s Ex. E, ECF No. 35 at 46–47 (emphasis added). Stated otherwise, Hunnel and Summers were liable for their intentional torts of assault and battery, and because intentional torts are not accidents, they are not "occurrences" as defined by the Policy, and Safety National is not required to provide coverage.

Bender argues that there is a genuine dispute of material fact as to whether Hunnel and Summers were acting within the scope of their employment because the assault and battery occurred while they were wearing their Wendy's uniforms and still clocked in for their shifts. ECF No. 34 at 18. Bender does not provide case law in support of that argument. *Chabot v. Wash. Mut. Bank (In re Chabot)*, 2007 Bankr. LEXIS 4980, at *23–24 (Bankr. D. Mont. May 10, 2007) ("attorney argument is not evidence and does not create issues of fact"). Even if Hunnel and Summers were still clocked in, I find it hard to imagine a situation where an off-premises assault

and battery would fall within the scope of their employment or duties related to the conduct of Wendy's' business. Consequently, Hunnel and Summers are not covered by the Policy.[2] Thus summary judgment in Safety National's favor is warranted.

### IV. Conclusion

It is hereby ordered that Safety National's motion for summary judgment **[ECF No. 34] is granted**. Accordingly, Safety National's motion to strike **[ECF No. 29] is denied as moot**.

The clerk of court is kindly instructed to enter judgment accordingly and to close this case.

Dated: September 4, 2024

_____
Cristina D. Silva
United States District Judge

---

[2] Because I find that the Hunnel and Summers are not covered under the Policy because their intentional actions do not fall within the scope of their employment nor occurrences while performing duties related to the conduct of Wendy's business, I decline to address the parties' other arguments on policy coverage.